**THRIFTWAY COMPANY,**
Plaintiff–Appellant,

v.

**U.S. DEPARTMENT OF ENERGY, et al., Defendants–Appellees.**

No. 10–81.

Temporary Emergency Court of Appeals.

Argued Aug. 17, 1990.

Decided Sept. 26, 1990.

Judgment Entered Sept. 26, 1990.

William F. Cockrell, Jr., Corpus Christi, Tex., with whom Robert J. Brooks, Washington, D.C. was, on the brief, for plaintiff-appellant Thriftway Co.

Richard F. Ahern, U.S. Dept. of Energy, Washington, D.C., with whom Don W. Crockett and Paul M. Geier of the same office were on the brief, for defendants-appellees U.S. Dept. of Energy, et al.

Before GARZA, Chief Judge, and CHRISTENSEN and PECK, Judges.

JOHN W. PECK, Judge:

In this appeal, Thriftway Company, a small oil refiner, challenges the district court's affirmance of a Department of Energy (DOE) Remedial Order directing Thriftway to repay with interest $670,923 in illegally acquired small refiner bias (SRB) entitlements. For the reasons stated below, we affirm the district court.

## REGULATORY HISTORY

In 1974, DOE developed SRB entitlements to help compensate small oil refiners for their relatively greater increase in operating costs compared to those of larger refiners. DOE issued SRB entitlements for oil processed at small refineries and for oil owned by small refiners, but processed by another refiner under processing agreements. A processing agreement was de-fined as "any agreement pursuant to which an owner of crude oil agrees to have that crude oil processed or refined by another person and retains ownership in some or all of the petroleum products so processed or refined from the crude oil." 10 C.F.R. § 211.62 (1976).

Unfortunately, some small refiners began engaging in paper transactions for the purchase and refining of crude oil solely to obtain SRB entitlements. Although the crude traveled from the original seller to the refiner without the small refiner exercising any control over it, paperwork would reflect a sale to the small refiner, a processing agreement with another refiner, and a final sale of the refined products to the processing refiner. The small refiner would then receive SRB entitlements for this nebulous transaction.

In May 1976, to counteract these dealings, DOE promulgated a rule which eliminated entitlements under processing agreements where the crude oil was purchased from and the refined products were sold, directly or indirectly, to the processing refiner. 10 C.F.R. § 211.67(e)(2) (1977). Despite the new rule, manipulation continued and DOE eliminated processing agreements from the entitlements program in 1977.

## FACTS

Appellant Thriftway is a small refiner located in Farmington, New Mexico. In 1979, a DOE audit of Thriftway revealed a suspicious transaction between Thriftway, Amorient Petroleum, Inc., and Hawaiian Independent Refinery, Inc. (HIRI), a wholly owned subsidiary of Pacific Resources, Inc. (PRI).[1] On November 12, 1976, Amorient made an agreement with HIRI for the sale of 660,000 barrels of Indonesian crude oil "C & F Delivered One Safe Port Hawaii." On November 24, 1976, the crude oil was loaded on a tanker in Dumai, Indonesia. The bill of lading provided that the shipment was "to order/notify" HIRI.

On December 1, after the tanker sailed, Amorient notified HIRI that it had "taken

1. As in the administrative record, both HIRI and PRI will hereinafter be referred to as HIRI.

action to sell" 366,345 barrels of the crude oil to Thriftway and the rest to another small refiner. Amorient and Thriftway confirmed the sale of the oil at $13.65 per barrel in a letter dated December 7, 1976. On December 8, HIRI and Thriftway executed a processing agreement whereby HIRI agreed to process the crude for Thriftway and then purchase it for $12.05 per barrel. Subsequently, Thriftway used the transaction to garner $670,923 in SRB entitlements. The three parties divided the money among themselves.

Based on these facts, the DOE Office of Hearings and Appeals (OHA) issued a final Remedial Order which concluded that Thriftway illegally obtained the SRB entitlements for this transaction. Thriftway exhausted its administrative appeals and then appealed to the district court. The district court affirmed the Remedial Order on the grounds that DOE's findings were based on substantial evidence and were not arbitrary or capricious. This appeal followed.

## STANDARD OF REVIEW

■ Judicial review of administrative orders is governed by § 211(d)(1) of the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note. It provides that no order shall be set aside "unless a final judgment determines that such order is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." Furthermore, courts should recognize the administrative expertise of an agency and accord its determinations great deference. *Behm Family Corp. v. U.S. Department of Energy*, 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990).

## ANALYSIS

The central issue here is whether DOE correctly determined that Thriftway unlawfully obtained the SRB benefits in question. Thriftway challenges the Remedial Order's findings that Thriftway did not own the crude because Amorient had already sold it to HIRI under the "C & F" contract; and that even if Thriftway did own the crude, it purchased it directly or indirectly from

HIRI in violation of the 1976 amendment. Additionally, Thriftway argues also that the 1976 amendment prohibiting "sweetheart" deals was improperly promulgated and therefore is invalid.

### Ownership of the crude

■ DOE determined that title passed to HIRI when the tanker was loaded on November 24, 1976. Without strong evidence to the contrary, title and risk of loss pass to the purchaser at the time of shipment under the "C & F" terms. UCC § 2–320, comments 1 and 16. Furthermore, the bill of lading read, "order/notify" HIRI, not Amorient, adding further evidence that HIRI owned the crude when it was shipped. Thus, DOE concluded that Amorient could not sell the crude to Thriftway because it had already been sold to HIRI.

However, Thriftway contends that because the agreement read, "C AND F DELIVERED ONE SAFE PORT HAWAII," title would not have passed until delivery. Before delivery, Amorient notified HIRI that it had "taken action to sell" 366,345 barrels of the crude to Thriftway. Because HIRI did not object, Thriftway argues that the original agreement was rescinded, allowing Amorient to pass title to Thriftway. Thriftway contends that the parties' actions manifest their intent that Thriftway acquire title to the oil and that this intention should control.

From the foregoing, it is clear that Thriftway was introduced into the transaction between Amorient and HIRI solely for the purpose of obtaining SRB entitlements. The agreement between Amorient and HIRI provided: "This telex will serve as our agreement to sell and your agreement to purchase" the crude. We are unpersuaded by Thriftway's argument that despite this language, Amorient was free to make another sales agreement with it and that HIRI's failure to object to the deal with Thriftway rescinded the original agreement. Equally unpersuasive is Thriftway's assertion, without citation of authority, that passage of title is controlled by the terminology "delivered one safe port Hawaii" rather than the "C & F" term.

We conclude that the plain language of the sales agreement, established UCC principles, the notation on the bill of lading, and the suspect circumstances of the transaction constitute substantial evidence that Thriftway unlawfully obtained the SRB entitlements for this transaction.

### Indirect purchase from HIRI

DOE bolstered its determination that Thriftway did not own the oil with the alternative finding that even if Thriftway had obtained title to the crude it would have come indirectly from HIRI in violation of the 1976 amendment. The amendment provides: "No entitlements shall be issuable ... where the crude oil processed pursuant to that processing agreement is purchased from and the refined products produced under that agreement are sold, directly or indirectly, to that other refiner." 10 C.F.R. § 211.67(e)(2) (1977). Under DOE's interpretation, the phrase "directly or indirectly" modifies both "sold" and "purchased from." Thus, Thriftway's indirect purchase from and sale of the refined products to HIRI violated the rule.

Thriftway argues that under the plain meaning rule, the phrase "directly or indirectly" modifies only the word "sold," not "purchased from." Thriftway contends that since there is no evidence that it purchased the crude from HIRI, there has been no violation of the rule. Thriftway maintains that it purchased the crude from Amorient.

It is true that in construing regulations, courts look first to the plain meaning of the language used. *United States v. Heller,* 726 F.2d 756, 762 (Temp.Emer.Ct.App. 1983). Where the language is ambiguous, however, the administrative interpretation "becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulations." *Id.* (citations omitted). Furthermore, the intention of the agency is a factor to be considered in construing regulations. *In Re Department of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375 (Temp.Emer.Ct.App.1982); *Wiggins Brothers, Inc. v. Department of Energy,* 667 F.2d 77, 87 (Temp.Emer.Ct.App.

1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982).

As demonstrated by the conflicting interpretations present in this case, this rule is not completely unambiguous on its face. Turning to the administrative interpretation, it is reasonable, and therefore not plainly erroneous. Furthermore, it is consistent with DOE's expressed intention of preventing small refiners from entering into processing agreements solely to obtain SRB benefits. 41 Fed.Reg. 9391, 9393 (1976). Therefore, we reject Thriftway's interpretation because it would allow the abuse that the rule was promulgated to prevent.

### Promulgation of the 1976 amendment

█ Finally, Thriftway argues that the 1976 rule prohibiting "sweetheart" deals is invalid because DOE failed to consider the nine policy objectives of the Emergency Petroleum Allocation Act, 15 U.S.C. § 753(b)(1). DOE notes that while the agency is obligated to consider proposed rules in light of the nine objectives, it is not necessary to publish a "laundry list indicating how each aspect of its proposed regulations furthers one or more of the specific objectives." *Naph–Sol Refining Co. v. Murphy Oil Corp.,* 550 F.Supp. 297, 311 (W.D.Mich.1982), *aff'd in part and rev'd in part, Mobil Oil Corp. v. Department of Energy,* 728 F.2d 1477 (Temp.Emer.Ct.App. 1983), *cert. denied sub nom., Murphy Oil Corp. v. Naph–Sol Refining Co.,* 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984).

In the present case, DOE did specifically cite several of the policy objectives in Federal Register notices concerning the proposed rule. 41 Fed.Reg. 9391, 9393 (1976); 41 Fed.Reg. 20392 (1976). Thus, DOE's consideration of the policy objectives is evident and we conclude that there is no merit to Thriftway's argument on this issue.

### CONCLUSION

We conclude that substantial evidence supports DOE's findings of fact. Additionally, DOE has reasonably interpreted the 1976 rule and its interpretation is entitled to deference. There is no merit to the

contention that the 1976 rule was improperly promulgated. Accordingly, we affirm the decision of the district court.