Joe N. PRATT, Plaintiff–Appellee,

v.

James D. WATKINS, Secretary of Energy, et al., Defendants–Appellants.

No. 5–129.

Temporary Emergency Court of Appeals.

Argued July 25, 1991.

Decided Sept. 12, 1991.

Don W. Crockett and Thomas Sacco, Judicial Litigation Div., Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., were on the brief for defendants-appellants.

Douglas S. Johnston and Christopher L. Daines, Douglas Johnston and Associates, P.C., Houston, Tex., were on the brief for plaintiff-appellee.

Before HOFFMAN, BROWN and THORNBERRY, Judges.

THORNBERRY, Judge:

The operator of several oil leases violated petroleum price regulations by misclassifying certain oil wells as stripper wells. Under a theory of restitution, the Department of Energy (DOE) issued a proposed remedial order seeking to recover a portion of these overcharges from Joe N. Pratt, a passive working interest owner who had the right to receive twenty percent of the proceeds generated by the sale of this oil but who was not involved in the operator's pricing decisions. Pratt contested the proposed remedial order, asserting that he never received his share of the overcharges. The Office of Hearings and Appeals enforced the remedial order, however, and the Federal Energy Regulatory Commission affirmed.

Pratt appealed the Commission's decision, and the district court enjoined enforcement of the order, concluding that the DOE did not have the power to issue the order and that, even if it did, it could not order Pratt to pay restitution because he was not responsible for the overcharges. We disagree with the district court's analysis, but we AFFIRM its ruling. The DOE cannot compel a passive working interest owner who was not responsible for overcharges to make restitution without proving that he actually received a portion of the overcharges.

## FACTS AND PROCEDURAL HISTORY

Intercoastal Operating Company and its successor, I.O.C. Production, Inc. (hereinafter collectively referred to as IOC) operated a number of oil wells located on leases in Arkansas, Louisiana, and Texas. As operator, IOC set the price for the oil sold from the leases and accepted payment on behalf of the working interest owners. Joe N. Pratt was a passive working interest owner of the leases and had the right to receive twenty percent of the proceeds generated by the sale of oil from the leases. However, Pratt played no role in, and had no control over, IOC's pricing decisions.

In 1983, the DOE conducted an audit of the oil leases that IOC operated between September 1973 and September 1980 and concluded that IOC had misclassified many of its leases as stripper well leases and had sold crude oil at prices that reflected this classification, which exceeded the prices that the regulations would have otherwise permitted. *See* 10 C.F.R. § 212.73(a) (1981). Consequently, the DOE issued a *proposed remedial order to IOC and to the* working interest owners of the property, including Pratt, which alleged that IOC had overcharged its customers by $1,055,-285.76. Pratt's proportionate share, based on his interest in the property, was $213,-121, plus interest.[1]

In February 1984, Pratt filed a Statement of Objections to the proposed remedial order, claiming, among other things, that he had never received his share of the overcharges and, therefore, that he could not be liable for restitution. In an enforcement proceeding, the Office of Hearing and Appeals (OHA) rejected Pratt's argument, concluding that whether he had "received his full share of revenues from the audited properties [was] irrelevant" to his liability for restitution. *See* Intercoastal Operating Co., 16 Energy Mgmt. (CCH) ¶ 83,021, at 86,233 (Oct. 29, 1987). The OHA issued a remedial order in favor of the DOE.

Pratt appealed the remedial order to the Federal Energy Regulatory Commission, reiterating the arguments that he made to the OHA. The Commission rejected Pratt's argument concluding that "Pratt [had] not proven he received less than he was entitled to or that he did not receive any distribution of overcharges." *See* Intercoastal Operating Co., 44 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,208, at 61,-763 (Aug. 2, 1988). But the Commission also concluded that Pratt would be responsible for restitution even if he had not received the overcharges. The Commission issued a final remedial order requiring Pratt to refund the overcharges with interest.

---

1. Because Pratt owned a portion of the crude oil when it was produced, he is a producer, *see* 10 C.F.R. § 212.31 (1981), and is subject to the

Mandatory Petroleum Price Regulations, 10 C.F.R. §§ 212.71–212.79 (1981).

In October 1988, Pratt brought an action against the DOE in federal district court. Pratt sought a declaratory judgment and an injunction prohibiting the DOE from enforcing the remedial order. The DOE filed a counterclaim seeking enforcement of the remedial order. Pratt moved for summary judgment.

In January 1991, the district court granted Pratt's motion and entered judgment against the DOE. The judge based his decision on two legal conclusions. First, he held that the Secretary of Energy did not have the power to order Pratt to pay restitution because section 209 of the Economic Stabilization Act had given that power exclusively to the district courts. Second, the judge concluded that the Secretary did not have the power to order Pratt to pay restitution because Pratt had no control over the pricing decisions made by IOC and, therefore, was without fault. The judge did not determine whether Pratt had received the overcharges. The DOE appealed the district court's determination to this court.

## DISCUSSION

### A. Standard of Review and the District Court's Analysis

 We accord no deference to either the district court's factual determinations or to its conclusions of law. *See International Drilling & Energy Corp. v. Watkins,* 920 F.2d 14, 17 (Temp.Emer.Ct.App. 1990). Our review is constrained in two ways, however. First, although we independently review the administrative record to determine whether to enforce the remedial order against Pratt, we can reverse the Commission's remedial order only if it "is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence." *See* Economic Stabilization Act of 1970, § 211(d)(1), 12 U.S.C.A. § 1904 note (West 1989).[2] Substantial evidence does not mean a large amount of evidence; it means enough evidence to demonstrate that the agency's

conclusion was not unreasonable. *See International Drilling,* 920 F.2d at 20; *Department of Energy v. Osborn,* 760 F.2d 282, 283 (Temp.Emer.Ct.App.1984) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Second, to resolve any factual disputes, we must rely solely on the administrative record. Neither this court nor the district court may supplement that record. *See United States Dep't of Energy v. Brimmer,* 776 F.2d 1554, 1559 n. 1 (Temp. Emer.Ct.App.1985) (citation omitted), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1261, 89 L.Ed.2d 571 (1986); *International Bhd. of Elec. Workers v. Boldt,* 513 F.2d 1405, 1407 (Temp.Emer.Ct.App.1975).

The parties concede that the district court's first conclusion, that the Secretary of Energy did not have the power to order Pratt to pay restitution, is directly contrary to prior opinions by this court. *See, e.g., Sauder v. Department of Energy,* 648 F.2d 1341, 1348–49 (Temp.Emer.Ct.App. 1981); *Bonray Oil Co. v. Department of Energy,* 472 F.Supp. 899, 902–04 (W.D.Okla.1978), *aff'd,* 601 F.2d 1191 (Temp.Emer.Ct.App.1979). Also, Pratt does not seriously defend the district court's second conclusion: that Pratt was not liable for restitution because he played no role in pricing the oil. The purpose of restitution is to prevent unjust enrichment. See Restatement of Restitution § 1 (1937). If Pratt received the overpayment, he would be enriched at the expense of customers who were overcharged, that is, "unjustly enriched," and he would owe restitution in the amount of the overpayment. *See* Restatement (Second) of Restitution § 5, at 60 (Tent. Draft No. 1, 1983); *id.* § 1(b), at 10 ("Often a person owes restitution for a benefit he received through entirely innocent behavior, and even through a transaction in which he took no part.").

Pratt's sole defense is a simple one. The Secretary has "the burden of proof with respect to the disputed elements of [an] affirmative case." 18 C.F.R. § 385.911

---

2. For the text of sections 209 and 211(d)(1) of the Economic Stabilization Act of 1970, see Economic Stabilization Act Amendments of 1971,

§ 2, Pub.L. No. 92–210, 1971 U.S.Code Cong. & Admin.News (85 Stat. 743) 837.

(1990). *See also* 5 U.S.C.A. § 556(d) (West 1977) (providing that "the proponent of a rule or order has the burden of proof"). Pratt contends that the DOE has not shown that he received the overcharges and that, under a theory of restitution, the DOE cannot compel him to pay what it has not proved that he received. Therefore, we must address only two questions. First, can the DOE collect the share of overcharges to which Pratt was entitled without proving that Pratt actually received these overcharges, and, if not, has the DOE met its burden of proving that Pratt received the overcharges?

### B. Obtaining Restitution Without Proving Enrichment

■ Section 5(a)(1) of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C.A. § 754(a)(1) (West 1976), authorizes the DOE to recover overcharges under procedures provided in section 209 of the Economic Stabilization Act of 1970, 12 U.S.C.A. § 1904 note (West 1989).[3] This permits the DOE to "order restitution of moneys received in violation of" the pricing regulations.[4]

The goal of restitution is to restore a defendant's unjust gain to the plaintiff. Thus, before a plaintiff can obtain restitution from a defendant, the plaintiff ordinarily must show that the defendant has received a benefit, the retention of which results in unjust enrichment. *See Citronelle–Mobile Gathering, Inc. v. Herrington*, 826 F.2d 16, 27 (Temp.Emer.Ct.App.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987). However, the DOE's action for restitution under section 209 is not always constrained by the requirement that the defendant actually *received* the benefit. *See Sauder v. Department of Energy*, 648 F.2d 1341, 1348 (Temp.Emer.Ct.App.1981). In *Sauder*, this court concluded that an operator who violated the regulations' price restrictions could be forced to refund the entire amount of the

overcharges even though he had received only a portion of the overcharges.

Applying *Sauder*, the DOE contends that Pratt can be held liable for his share of the overcharges even if he never received them. Both the OHA and the Commission agreed with the DOE, concluding that whether Pratt actually received the overcharges was irrelevant. *Sauder* does not support this conclusion, however. In *Sauder*, this court held the operator, Sauder, responsible for the total amount of the overcharges because he was "the animating force behind" the production of oil at the leases and because he made the decisions that led to the regulatory violations. *See Sauder*, 648 F.2d at 1343, 1347.

> In these circumstances, we think that it is within the authority and discretion of the agency to hold the owner-operator of a lease liable for the full amount of the overcharge. To require the agency to seek refunds from each individual property owner would place a heavy burden on the agency, limiting its ability to repair infractions of its pricing rules. Shifting the burden to one in Sauder's position of responsibility aids the task of enforcement without working unfairness.

*Id.* at 1347–48. Since *Sauder*, this court has ordered a party to pay restitution in excess of charges *actually received* only if that party was the "animating force" behind the sale of the oil. *See, e.g., Citronelle–Mobile*, 826 F.2d at 27 (holding president of corporation liable for overcharges because he was "the 'animating force' behind the sale of" the oil); *United States v. Sutton*, 795 F.2d 1040, 1063 (Temp.Emer. Ct.App.1986) (same), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987); *United States v. Exxon Corp.*, 773 F.2d 1240, 1269–71 (Temp.Emer.Ct.App.1985) (holding Exxon liable for full amount of overcharges because Exxon caused the overcharges), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 893, 88 L.Ed.2d 926 (1986);

---

**3.** The President's authority to regulate prices under the Emergency Petroleum Allocation Act of 1973 and the Economic Stabilization Act of 1970 expired on September 30, 1981. *See* 15 U.S.C.A. § 760g (West 1976).

**4.** *See supra* note 3.

*Christmann & Welborn v. Department of Energy,* 773 F.2d 317, 321 (Temp.Emer.Ct. App.) (directing joint venture to pay the entire amount of overcharges because the joint venture caused the overcharges), *cert. denied,* 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

In this case, the DOE concedes that Pratt played no role at all in, and had no control over, IOC's misclassification of the oil wells and the resulting overcharges.[5] It follows, tautologously, that Pratt was not the "animating force" behind the pricing of the oil and cannot be held responsible under that doctrine. The DOE contends, however, that it is not seeking the remedy imposed against the operator in *Sauder;* it is not trying to collect the entire amount of the overcharges from Pratt, it is only trying to collect Pratt's share. The legal significance of the DOE's generosity eludes us. In either situation, the DOE is attempting to force Pratt to make restitution without proving that he has benefited from the overcharges.

The DOE argues that IOC was Pratt's agent and that, therefore, Pratt was responsible for IOC's actions and Pratt should incur the same liability as IOC. But a principle is not responsible to make restitution for money wrongfully appropriated by an agent unless the principle received the money. *See* 3 G. Palmer, *The Law of Restitution* § 14.16(c), at 220–22 (1978); Restatement (Second) of Agency § 282 comment i, at 617 (1958). That is the essence of restitution: a person is required to make restitution only if "he has been unjustly enriched at the expense of another." *See* Restatement of Restitution § 1; 1 G. Palmer, *supra,* § 1.1, at 5 (noting that restitution is not authorized to prevent "all injustice but rather one special variety: the unjust enrichment of one person at the expense of another"). Therefore, even if the DOE is correct and IOC was acting as

Pratt's agent when it overcharged customers, the DOE cannot recover the overcharges unless it proves that Pratt received them.

### C. Proving that Pratt was Enriched

■ Pratt concedes that he received approximately $200,000 from IOC but asserts that he was underpaid and that none of this money was the result of the overcharges. He produced no evidence to support this contention, but he argues that the DOE never proved that he *did* receive the overcharges. As noted above, to recover under a theory of restitution, the DOE must show that Pratt received the overcharges. *See* 1 G. Palmer, *supra,* § 1.8, at 44–45. The issue is whether the DOE successfully met its burden.

The DOE established that IOC had overcharged its customers and that Pratt had a written agreement with IOC to receive twenty percent of that money. Based on this evidence, the Commission concluded, as an alternate basis for its decision, that "Pratt [had] not proven he received less than he was entitled to or that he did not receive any distribution of overcharges." *See* Intercoastal Operating Co., 44 Fed.Energy Reg. Comm's Rep. (CCH) ¶ 61, 208, at 61,763 (Aug. 2, 1988). Although the panel may reverse the Commission's factual determination only if it is unreasonable, its conclusion in this case is couched in an incorrect interpretation of the law. The DOE, not Pratt, had the burden of proof, and it presented no evidence at all that Pratt received the overcharges that were due him. The reason for compelling an individual to make restitution is that it would be unjust for him to retain a benefit. To allow the DOE to meet its burden merely by proving that Pratt was *entitled* to a benefit would be to eviscerate the doctrine of restitution.[6]

---

5. The DOE does not explain why it has not sought to recover the entire amount of the overcharges from IOC or from individuals who played a role in pricing the oil. The logical assumption of its oral advocate was that IOC and these individuals are bankrupt.

6. One commentator notes that

restitution of the value of what plaintiff lost is simply compensatory damages. Used in this sense, "restitution" loses all utility as a means of distinguishing one body of law from another. Restitution must be distinguished from compensation, either by its focus on restoration of the loss in kind or by its focus on defendant's gain as the measure of recovery.

In restitution, "[t]he equity of the transaction must shape the measure of relief." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919) (Cardozo, J.). If Pratt had taken some action to make it impossible for the DOE to prove that the overcharge amounts were a portion of the money that he received, the DOE could recover the overcharges without proving that he received them. *See* 1 G.· Palmer, *supra*, § 2.13, at 167. But the DOE makes no such allegation. It is seeking restitution from a passive working interest owner who, it concedes, is not guilty of wrongful conduct. Under these circumstances, it must prove that the working interest owner received the overcharges, not merely that he was entitled to receive them. *Compare* J–W Operating Co., 7 Energy Mgmt. (CCH) ¶ 83,014, at 86,140 (Jan. 2, 1981) (upholding remedial order issued against working interest owners who received their share of overcharges).

The DOE argues that it has made a *prima facie* case for restitution by proving that Pratt was entitled to receive a share of the overcharges and that Pratt could avoid liability simply by producing evidence that he did not receive the overcharges. It contends that Pratt was in the best position to produce evidence on this issue and that shifting the burden of proof in this manner would be administratively efficient because it would prevent the DOE from having to engage in costly discovery in order to demonstrate that each working interest owner had received the funds to which he was entitled. But the premise that Pratt easily could prove that he did *not* receive the

overcharges is faulty. Like the DOE, Pratt would have to calculate the gross receipts of the wells over the seven year span of the audit, demonstrate the share of those proceeds to which he was entitled, and provide a summary of the amount of money that he received from those wells. Therefore, although we concede that the DOE could proceed more efficiently if it were not burdened by discovery, we do not believe that it is fair to shift this burden to Pratt, a passive working interest owner who was not culpable for the overcharges.

## CONCLUSION

The DOE, as the proponent of the remedial order issued to Pratt, has the burden of proving the elements of its theory of recovery. Under a theory of restitution, the DOE was required to prove that Pratt received a benefit and that it would be unjust for him to retain that benefit. The DOE did not prove that Pratt received his share of the overcharges, and, therefore, it did not prove that he received a benefit. Consequently, Pratt is not liable for his share of the overcharges. The summary judgment issued by the district court, enjoining enforcement of the remedial order, is AFFIRMED.

Laycock, *The Scope and Significance of Restitution,* 67 Texas L.Rev. 1277, 1282–83 (1989).