**HOUSTON OIL & REFINING, INC. and Joseph A. Imparato, Plaintiffs–Appellants,**

v.

**UNITED STATES FEDERAL ENERGY REGULATORY COMMISSION, United States Department of Energy, Hazel O'Leary, Secretary of Energy, and The United States, Defendants–Appellees.**

No. 95–1354.

United States Court of Appeals, Federal Circuit.

Sept. 10, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Nov. 18, 1996.

---

Marvin C. Moos, Keck, Mahin & Cate, Houston, Texas, argued for plaintiffs-appellants. With him on the brief was Grant Cook, Brown, Parker & Leahy, L.L.P.

Don W. Crockett, Office of General Counsel, U.S. Department of Energy, Washington, DC, argued for defendants-appellees.

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

This appeal arises from a remedial order ("RO") issued by the Federal Energy Regulatory Commission ("FERC") and affirmed by the United States District Court for the Southern District of Texas. On April 29, 1988, the Department of Energy ("DOE") issued a RO (i) finding that Houston Oil and Refining, Inc. ("Houston") had violated 10 C.F.R. § 212.186 (1980) (the "layering regulation"), a crude oil resale regulation, and (ii) ordering restitution of overcharges. *Houston Oil & Refining, Inc.,* 17 DOE (CCH) ¶ 83,011 (1988). The RO held Houston and Joseph A. Imparato ("Imparato") jointly and severally liable for the restitution. *Id.* at 86,132–35. FERC affirmed the RO, *Houston Oil & Refining, Inc.,* 65 FERC (CCH) ¶ 61,022 (1993), and Houston and Imparato appealed to the district court. On March 15, 1995, the court granted DOE's motion for

summary judgment, affirmed FERC's RO, and entered judgment requiring Houston and Imparato to disgorge as restitution $57,989,-722.44, plus interest. *Houston Oil & Refining, Inc. v. Department of Energy*, No. H–93–3836 (S.D.Tex. Mar. 15, 1995). On May 15, 1995, Houston and Imparato appealed concurrently to the Courts of Appeals for the Federal Circuit and the Fifth Circuit. The Fifth Circuit granted DOE's motion to dismiss the appeal for lack of jurisdiction. *Houston Oil & Refining, Inc. v. FERC*, No. 95–20394 (5th Cir. June 28, 1995). Houston and Imparato challenge both our jurisdiction and the decision of the district court on the merits. For the reasons set forth below, we (i) hold that we have jurisdiction and (ii) affirm the decision of the district court affirming FERC's RO.

## BACKGROUND

As we recounted in *Phoenix Petroleum Co. v. FERC*, 95 F.3d 1555 (Fed.Cir.1996), also decided today, in 1971 President Nixon imposed wage and price controls under the authority of the Economic Stabilization Act of 1970 ("ESA"), Pub.L. No. 91–379, 84 Stat. 799 (1970) (codified as amended at 12 U.S.C. §§ 1901–1910 note (1994)). 95 F.3d at 1559–60. In 1973, the Emergency Petroleum Allocation Act of 1973 ("EPAA") was enacted. Pub.L. No. 93–159, 87 Stat. 627 (1973) (codified as amended, but omitted, at 15 U.S.C. §§ 751 *et seq.* (1994)). That statute, which incorporated by reference portions of the ESA, required the President to promulgate regulations providing for the mandatory allocation of crude oil, in amounts and at prices specified in the regulations. *Phoenix*, 95 F.3d at 1560; *Bonray Oil Co. v. Department of Energy*, 472 F.Supp. 899, 900–01 (W.D.Okla.1978), *aff'd*, 601 F.2d 1191 (Temp. Emer.Ct.App.1979). The President's authority under the EPAA expired on September 30, 1981. Energy Policy and Conservation Act, Pub.L. No. 94–163, § 461, 89 Stat. 871, 955 (1975); *Texas American Oil Corp. v. Department of Energy*, 44 F.3d 1557, 1562 (Fed.Cir.1995) (in banc). However, a savings provision in the EPAA provided that expiration of the President's authority did not affect pending enforcement proceedings or enforcement proceedings, such as the present

one, based upon acts committed or liability incurred prior to the expiration date. EPAA § 18, 89 Stat. at 955; *Texas American*, 44 F.3d at 1562.

The regulations controlling the allocation and price of crude oil were enforced by DOE and its predecessors, the Cost of Living Council, the Federal Energy Office, and the Federal Energy Administration. *Phoenix*, 95 F.3d at 1559–61. FERC is charged with reviewing EPAA ROs issued by DOE. 42 U.S.C. § 7193. After such review, FERC issues an order affirming, modifying, or vacating the remedial order. For purposes of judicial review, the FERC order constitutes a final agency action. *Id.* The FERC decision initially is reviewed in a United States district court. *See* 42 U.S.C. § 7193(c); 42 U.S.C. § 7192(a); ESA § 211(a), 85 Stat. at 748–49. Prior to April 29, 1993, review of the district court decision was within the jurisdiction of the Temporary Emergency Court of Appeals ("TECA"). *Phoenix*, 95 F.3d at 1559–62. Effective that date, however, TECA was abolished, and all remaining actions within its jurisdiction were transferred to this court. Federal Courts Administration Act of 1992 ("FCAA"), Pub.L. No. 102–572, § 102, 106 Stat. 4506, 4506–07 (1992); *Texas American*, 44 F.3d at 1561. At the same time, the jurisdiction of the Federal Circuit was expanded to add appeals arising under the EPAA/ESA. FCAA § 102(c), 106 Stat. at 4507; *see* 28 U.S.C. § 1295(a)(11)-(12) (1994).

In *MAPCO Int'l Inc. v. FERC*, 993 F.2d 235 (Temp.Emer.Ct.App.1993), TECA recounted the circumstances which led to the layering regulation, which is at issue in this case.

In the latter half of the 1970s there was a large increase in the number of [crude oil] resellers and a change from the traditional reselling activities of gathering, storing and transporting crude oil, as they had historically done in the past, to an almost instantaneous transfer of title from a seller to a buyer. In response the DOE promulgated a new set of regulations in 1978, designated 10 C.F.R. Part 212, Subpart L,

that applied to resales of crude oil. In general, the regulations were established to limit the legitimate resellers (those gathering and moving the crude oil) to a "permissible average markup" (PAM) of their prices each month, and to deny price markups for resales in which no legitimate reselling service was performed. This latter activity, which inflated prices of crude oil when none of the services traditionally associated with resale of crude oil was performed, is called "layering." The layering rule [prohibited layering]. 42 Fed. Reg. 64856, 64865 (December 29, 1977), reprinted at 10 C.F.R. § 212.186.

993 F.2d at 238.

In this case, DOE found that Houston was a Texas corporation organized in May 1979, and that it conducted its first crude oil transaction in June 1979. During the period June 1979 through August 1980, Houston engaged in the trade or business of purchasing crude oil and reselling it, without substantially changing its form, to purchasers other than consumers. *Houston Oil,* 17 DOE at 86,123–24. During that time, Imparato was Houston's president and sole stockholder. *Id.* at 86,134. It was uncontested that Houston sold the oil at prices in excess of those at which it was acquired. *Id.* at 86,124. DOE determined that Houston had violated the layering regulation and ordered restitution of the overcharges. *Id.* at 86,130–32, 86,135. Imparato was held to be jointly and severally liable for the violations under the "central figure" theory of liability because of his personal involvement in the illegal conduct. *Id.* at 86,132–35. This appeal is before us because FERC and the district court have denied Houston's and Imparato's appeals to set aside the RO.

## DISCUSSION

Houston and Imparato argue first that we lack jurisdiction over their entire appeal. Alternatively, they contend that we at least lack jurisdiction with respect to certain of the issues they raise. On the merits, they argue that FERC improperly shifted the burden of proof from DOE and that the layering regulation is invalid and unenforceable. They also contend that DOE lacked statutory and constitutional authority to impose personal liability upon Imparato. Finally, they argue that the RO must be set aside because it is based on invalid "federal common law" principles, violates Article III of the Constitution, and is contrary to Imparato's Seventh Amendment jury trial right.

## I. Jurisdiction

■ The Department of Energy Organization Act ("DOE Act"), Pub.L. No. 95–91, 91 Stat. 565 (1977) (codified at 42 U.S.C. § 7101 *et seq.* (1994)), established DOE and FERC. According to Houston and Imparato, we only have jurisdiction commensurate with that which could have been exercised by TECA, and TECA could not have exercised jurisdiction over this case because it does not arise under the EPAA/ESA, but, rather, under the DOE Act. Houston and Imparato argue that we lack jurisdiction over the appeal because the FERC RO was issued under the exclusive authority of section 503(c) of the DOE Act, 42 U.S.C. section 7193(c). Alternatively, they argue that we lack jurisdiction over specific issues raised in the appeal, because the issues do not involve matters under the ESA or EPAA. These alleged non-EPAA/ESA issues are whether FERC improperly shifted the burden of proof and whether Imparato can be held jointly and severally liable for Houston's violations of the layering regulation. Houston and Imparato contend that this appeal, or the specific non-EPAA/ESA issues, at least, should be transferred to the Fifth Circuit.

In *Phoenix,* we were presented with a similar challenge to our jurisdiction. The *Phoenix* appellants advanced, but in more detail, the same arguments raised by Houston and Imparato. 95 F.3d at 1563–66. As in *Phoenix,* we reject the request to transfer this appeal, in whole or in part, back to the Fifth Circuit.

■ In brief, in order for us to dismiss this appeal in favor of the Fifth Circuit, we would have to find, pursuant to *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988), that the Fifth Circuit's decision to dismiss in favor of our court was not plausible. 486 U.S. at

819, 108 S.Ct. at 2179. The Fifth Circuit's decision to dismiss in favor of this court was plausible, because this appeal meets our threshold requirements for jurisdiction. Resolution of the merits—whether to set aside the FERC RO holding Houston and Imparato jointly and severally liable for Houston's EPAA/ESA violations—requires application or interpretation of the EPAA/ESA or related regulations, see Part III B, post, and this EPAA/ESA issue was adjudicated in the district court. *See Texas American*, 44 F.3d at 1563–64 (summarizing TECA threshold jurisdictional requirements). We also reject the argument of Houston and Imparato that we lack jurisdiction over certain issues. Neither the issue of Imparato's liability nor the burden of proof issue is a non-EPAA/ESA issue. *Phoenix*, 95 F.3d at 1566 n. 5. Each is an EPAA/ESA issue that was adjudicated in the district court.

## II.  Standard of Review

■ In *Texas American*, this court, sitting in banc, adopted as precedent the body of law represented by the holdings of TECA. 44 F.3d at 1561. We review the district court's summary judgment decision *de novo*. *MAPCO*, 993 F.2d at 239. An EPAA/ESA FERC RO will be enjoined or set aside only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. *Phoenix*, 95 F.3d at 1567; *MAPCO*, 993 F.2d at 239. We accord the agency's determination great deference and will approve the decision if there is a rational basis for it. *Phoenix*, 95 F.3d at 1567; *MAPCO*, 993 F.2d at 239.

## III.  The Appeal of the Remedial Order

Houston and Imparato challenge the FERC RO on three grounds, each of which

was rejected by both FERC and the district court. Two of those grounds were asserted by the appellants in *Phoenix* and *MAPCO*: the contention that FERC improperly shifted the burden of proof with respect to proving a violation of the layering regulation; and the contention that the layering regulation is invalid and unenforceable. *See Phoenix*, 95 F.3d at 1568–69; *MAPCO*, 993 F.2d at 239–45. The third ground for the appeal is that FERC erred in holding Imparato jointly and severally liable with Houston for restitution of Houston's overcharges. We briefly discuss the first two issues before addressing the personal liability issue.

### A.  The Burden of Proof and Validity of the Regulation

■ According to Houston and Imparato, FERC improperly shifted the burden of proof as to whether Houston had violated the layering regulation. Their arguments on this point are substantially the same as those advanced by the appellants in *Phoenix* and *MAPCO* and must be rejected. There was no shifting of the burden of proof. Houston and Imparato have "simply failed to defend against the government's evidence of ... overcharge violations." *MAPCO*, 993 F.2d at 245; *Phoenix*, 95 F.3d at 1568.[1]

■ In arguing that the layering regulation is invalid, Houston and Imparato contend that the district court erred in rejecting their argument that the regulation is void for vagueness. In support of their argument, they rely upon the Supreme Court's decision in *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as

---

1. The DOE summarized the evidence as follows. It is undisputed that [Houston's] resales of crude oil were carried out through paper transfers of ownership that occurred as the shipments of crude oil were being transported either through a common carrier pipeline or on board a ship or at the instant the crude oil left the ship at the terminal. These in-line and in-ship transfers involved the simultaneous acquisition and transfer of title to the crude oil

by [Houston]. It is also undisputed that [Houston] sold the crude oil at prices in excess of those at which it acquired the oil. There is no indication in the record that [Houston] physically gathered, transported or stored the crude oil, or paid any fees for the physical gathering, transportation or storage of the crude oil.
*Houston Oil*, 17 DOE at 86,124.

to its application violates the first essential of due process of law." (citing *International Harvester Co. v. Kentucky,* 234 U.S. 216, 221, 34 S.Ct. 853, 854–55, 58 L.Ed. 1284 (1914) and *Collins v. Kentucky,* 234 U.S. 634, 34 S.Ct. 924, 58 L.Ed. 1510 (1914))). The layering regulation provides in pertinent part as follows:

> The price for crude oil charged by a reseller which in a sale performs no *service or other function traditionally and historically associated with the resale of crude oil* shall not exceed the actual price paid by the reseller for the crude oil. . . .

10 C.F.R. § 212.186 (1980) (emphasis added); *MAPCO,* 993 F.2d at 238. Houston and Imparato argue that the key phrase "service or other function traditionally and historically associated with the resale of crude oil" is impermissibly vague.

In rejecting this argument, the district court relied on *MAPCO.* There, the crude oil reseller, MAPCO, argued that the notice adopting the layering regulation was insufficient. 993 F.2d at 239–40. At issue was the meaning of the traditional and historical service or other function phrase. *Id.* at 241–42. En route to upholding the district court's determination that DOE fulfilled notice and comment requirements for the regulation, TECA noted two Notices of Proposed Rulemaking ("NOPR") issued with respect to the regulation. *Id.* at 241–42. TECA recounted that

> the August 1977 NOPR reiterated the agency position expressed in its first NOPR, issued October 29, 1976, that "crude oil resellers provide basically a gathering and transportation service." It then proposed amendments and interpretative rulings to the price regulations to clarify that layering practices are not permitted. It explicitly described "layering" as "the insertion of one or more 'resellers' between the producer and refiner and the charging of one or more markups, where the 'layering' firm performs no service or other function traditionally and historically

associated with the resale of crude oil." 42 Fed.Reg. 41256, 41262 (August 15, 1977).

*MAPCO,* 993 F.2d at 242. The court also stated that "MAPCO knew or should have known that its activities were not services traditionally and historically associated with the reselling of crude oil." *Id.* at 244.

In this case, Houston and Imparato attempt to get around *MAPCO* by arguing unconstitutional vagueness instead of failure of notice. *MAPCO* is not so easily avoided, however, for in that case TECA noted that the agency twice iterated its position that "crude oil resellers provide basically a gathering and transportation service." *Id.* at 242. TECA, therefore, found that the agency rather clearly stated its position that the traditional and historical service or function of a crude oil reseller is gathering and transporting. In *United States v. Sutton,* 795 F.2d 1040 (Temp.Emer.Ct.App.1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987), TECA rejected the argument that 10 C.F.R. § 212.131, another crude oil reseller regulation, was unconstitutionally vague. TECA noted that the Supreme Court "pointed out that the degree of vagueness that the Constitution will tolerate depends in part upon 'the nature of the enactment' " and that " 'economic regulation is subject to a less strict vagueness test.' " *Sutton,* 795 F.2d at 1054, quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982). In light of *MAPCO* and *Sutton,* we have no difficulty concluding that the layering regulation is not unconstitutionally vague.

### B. Liability of Imparato for Houston's violations

#### 1. The DOE and FERC Decisions

DOE found Imparato personally liable for Houston's layering violations under the "central figure" or "animating force" theory of liability.[2] *Houston Oil,* 17 DOE at 86,132–

---

**2.** In so finding, DOE's Office of Hearings and Appeals ("OHA") affirmed the Proposed Remedial Order ("PRO") issued by the agency's Economic and Regulatory Administration ("ERA"). The OHA then issued a final DOE RO. *Houston*

*Oil,* 17 DOE at 86,123, 86,136–37. It was this RO that then was the subject of the FERC proceedings, with review by an Administrative Law Judge ("ALJ"), *Houston Oil & Refining, Inc.,* 46

35. This liability was imposed on Imparato because of his personal involvement in Houston's illegal conduct. DOE concluded that its authority to impose this liability was based on its broad authority to order restitution for regulatory violations under section 209 of the ESA, which read as follows:

> Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged ... in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices.... In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation.

85 Stat. at 748. While section 209 pertained to district courts, DOE read TECA precedent as holding that the section grants DOE authority to order restitution of overcharges. *Houston Oil,* 17 DOE at 86,132 n. 9, citing *Citronelle–Mobile Gathering, Inc. v. Edwards,* 669 F.2d 717, 721–23 (Temp.Emer.Ct.App.), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982); *Bonray,* 472 F.Supp. at 903–905.

DOE also noted that restitution is equitable in nature and "is usually thought of as a remedy by which [a] defendant is made to disgorge ill-gotten gains *or to restore the status quo,* or to accomplish both objectives." *Houston Oil,* 17 DOE at 86,132–33 (quoting *Sauder v. Department of Energy,* 648 F.2d 1341, 1348 (Temp.Emer.Ct.App.1981) (quoting 5 Moore's Federal Practice ¶ 38.24[2])). DOE employed a two-prong test to determine whether Imparato would be held personally liable as a "central figure" for Houston's regulatory violations. *Houston Oil,* 17 DOE at 86,133. Under this test, a corporate officer will be held liable if it is shown that (1) the officer exercised personal control of the firm's regulated operations or participated in the transactions in which the overcharges occurred; and (2) the officer personally benefitted from the overcharges. DOE rejected the argument that Imparato could

not be held personally liable as a central figure unless he intentionally committed a tort, as well as the argument that a central figure's liability is limited to the amount of benefits actually received. *Id.* at 86,133–35. It found that Imparato was the central figure who had personal control and participated in the overcharges that violated the regulations. *Id.* at 86,134. Thus, the first prong of the two-prong test was met.

With respect to the second prong—the agency must show that the officer personally benefitted from the overcharges—DOE found that it was proved as follows:

> [There was] a *prima facie* showing that Imparato benefitted from the overcharges. In previous decisions we have acknowledged that ownership or control of a firm's operation at the time of the alleged violations implies the receipt of a personal benefit. *T & M Petroleum [Corp.],* 15 DOE [¶ 83,021] at 86,255 [ (1987) ]; *Robison Energy Corp.,* 14 DOE ¶ 83,028 at 86,238 (1986).... Similarly, we find in this proceeding that no evidence exists to suggest that [Houston] was not organized for profit, or that [Houston] did not earn a profit from the layering overcharges. Thus, we can infer from Imparato's control and ownership of [Houston] during the audit period that he benefitted from the more than $150,000,000 in overcharges established in the PRO which are uncontroverted by [Houston]. [Houston] has made no showing to the contrary.

*Houston Oil,* 17 DOE at 86,134–35. Therefore, DOE held that Imparato, as central figure and animating force in the violations, should be held jointly and severally liable for all of Houston's overcharges. *Id.* at 86,135.

On appeal before the FERC ALJ, Houston and Imparato raised two new arguments. *Houston Oil,* 46 FERC at 65,083. The first was that imposing personal liability on Imparato was not a restitutionary remedy, but a penalty that could only be heard as a common law action by an Article III court. The ALJ rejected this argument because he found the decision to be "perfectly proper and in accordance with established law and

FERC (CCH) ¶ 63,022, and then by the full Commission, *Houston Oil,* 65 FERC ¶ 61,022.

precedent." *Id.* Houston and Imparato also contended that DOE improperly imposed liability, because it failed to follow *Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d 16, 23–25 (Temp.Emer.Ct.App.), *cert. denied sub. nom. Chamberlain v. United States,* 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987), and condition its finding of liability upon "'the particular circumstances and facts' of this proceeding, with regard to the demonstrated 'equities.'" *Houston Oil,* 46 FERC at 65,083. This argument was "easily put to rest" by the ALJ, because no equities were argued or identified before DOE. The ALJ found that DOE had convincingly established that no equities were present on the record before him or DOE that would mitigate against imposition of personal liability on Imparato for Houston's violations. *Id.*

Houston and Imparato appealed to FERC, but did not challenge the facts that established that Imparato was a "central figure" in Houston's violations of the layering regulation. *Houston Oil,* 65 FERC at 61,284–85. Instead, they argued that DOE had failed to put forward evidence concerning mitigation of the restitutionary amount. TECA had stated that "because restitution is an equitable remedy, we would be careful to condition a finding of personal liability on the particular circumstances and equities of each case." *Id.* at 61,285 n. 19 (quoting *Citronelle–Mobile,* 826 F.2d at 25). FERC concluded that raising mitigating facts—"the particular circumstances and equities of each case"—was an affirmative defense that Houston and Imparato had to plead. The ALJ had considered the equities, and found that Imparato had not put forward any equities that might have weighed against imposing personal liability. *Id.* at 61,285.

Houston and Imparato also renewed their common law/Article III argument. They claimed that DOE had imposed liability based on tort law, which could only be done by an Article III court. FERC rejected this argument and held that, under *Citronelle–Mobile,* the decision to impose central figure liability is based on the finding that the conduct of an individual violated law or regulation; it is not dependent on findings that

establish the elements of common law torts. *Id.,* citing *Citronelle–Mobile,* 826 F.2d at 25. In FERC's view, DOE was enforcing federal pricing regulations in light of Imparato's conduct; it was not bringing a common law tort action against Imparato. *Houston Oil,* 65 FERC at 61,285.

On appeal, Houston and Imparato raise essentially two issues: (1) whether DOE acted in excess of its authority when it imposed personal liability on Imparato for Houston's violations of the EPAA/ESA regulations, and (2) whether DOE erred when it decided to impose personal liability on Imparato based on its finding that he benefited from Houston's overcharges.

### 2. DOE's Authority to Impose Personal Liability

In arguing that DOE did not possess statutory authority to impose personal liability on Imparato, Houston and Imparato contend that section 209 of the ESA, which is quoted above, only authorized enforcement actions in the district courts, and that this court has established a clear rule regarding the scope of an agency's jurisdiction. They cite *Killip v. Office of Personnel Management,* 991 F.2d 1564 (Fed.Cir.1993), in which we stated that "[a]ny and all authority pursuant to which an agency may act ultimately must be grounded in an *express* grant from Congress." 991 F.2d at 1569 (emphasis added). As the ESA limited enforcement to actions brought in district courts, they argue DOE had no authority to proceed against Imparato for personal liability at the agency level.

DOE counters that TECA held that DOE has the authority to issue ROs to individuals. In *Sauder,* as in this case, DOE issued an RO against Sauder as an animating force. On appeal, TECA rejected Sauder's assertions that DOE had no authority to do so. *Sauder,* 648 F.2d at 1347–49. DOE also argues that Congress left no doubt whatsoever about DOE's role in enforcing the ESA when it passed the DOE Act. According to DOE, section 503 of the DOE Act explicitly vested DOE and FERC with authority to adjudicate allegations that the EPAA/ESA regulations had been violated and to order appropriate relief.

■ We conclude that DOE does have statutory authority to impose liability upon a "central figure" such as Imparato; and, consistent with *Killip*, we further conclude that DOE's authority is grounded in an express grant from Congress. The agency action which we review was undertaken pursuant to 42 U.S.C. § 7193. Section 7193(a) states that "[i]f upon investigation [DOE] believes that a person has violated any regulation, rule, or order ... promulgated pursuant to the [EPAA], [DOE] may issue a remedial order to the person."[3] Section 7193(c) provides for review of the DOE RO by FERC. After such review, FERC "shall ... issue an order, based on findings of fact, affirming, modifying or vacating the Secretary's remedial order, or directing other appropriate relief." 42 U.S.C. § 7193(c). For the purposes of judicial review, the FERC order constitutes a final agency action. *Id.*

■ "An agency is but a creature of statute" that has no "greater authority than that conferred under the governing statute." *Killip*, 991 F.2d at 1569. In this case, we are reviewing an agency action which was undertaken pursuant to 42 U.S.C. § 7193 in order to enforce the EPAA/ESA regulations. As we read section 7193, Congress has expressly granted DOE the authority to enforce the EPAA/ESA by issuing an RO. We therefore conclude that DOE has an express grant of statutory authority to issue an RO to enforce the EPAA/ESA and the related regulations.

The additional arguments that Houston and Imparato raise against DOE's authority lack merit. It is argued first that DOE had no authority to impose central figure liability on Imparato, because the central figure theory is dependant upon "federal common law" principles rejected by the Supreme Court in *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). In *O'Melveny*, the Court stated that "[t]here is no federal general common law." 512 U.S. at ——, 114 S.Ct. at 2053 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)).

■ We reject Imparato's "federal common law" argument that *O'Melveny* overrules TECA caselaw on central figure liability. In *O'Melveny*, the "federal general common law" issue arose because the Federal Deposit Insurance Corporation, as receiver of a federally insured bank, had sued O'Melveny in a federal district court alleging *state* causes of action. *Id.* at —— ——, 114 S.Ct. at 2051–52. The Court decided the question of whether a federal-law or state-law rule of decision governed the tort liability of attorneys who provided services to the bank. *Id.* at ——, 114 S.Ct. at 2051.

In this case, there is no state cause of action. We are reviewing a DOE agency action undertaken pursuant to one federal law, the DOE Act, in order to enforce federal regulations issued under another federal law, the EPAA/ESA. We are not reviewing a case where a federal-law rule of decision is asserted in connection with a state cause of action. *O'Melveny* is inapposite.

■ Houston's and Imparato's remaining arguments as to DOE's authority are grounded in the argument that DOE, an agency, unconstitutionally adjudicated a common law tort, in violation of Article III of the Constitution and contrary to Imparato's right to a jury trial under the Seventh Amendment. These arguments fail because TECA held in *Citronelle–Mobile* that central figure liability is not dependent upon establishing the elements of a common law tort. 826 F.2d at 25. Rather, the liability attaches because the individual acted in violation of the EPAA/ESA and its accompanying regulations. *Id.* With respect to the related question of a right to a jury trial, TECA succinctly held in *Sutton* that "[a]n award of restitution is an equitable remedy, and not a penalty. Under such circumstances, the district court properly denied Sutton's request for a jury trial." 795 F.2d at 1061.

For the foregoing reasons, we hold that DOE had authority to impose central figure personal liability upon Imparato for Houston's overcharges in violation of the EPAA/ESA. We turn next to the question of

---

3. As noted above, the EPAA incorporated by reference certain provisions of the ESA. Among those provisions was section 209 of the ESA. EPAA § 5, 87 Stat. at 633.

whether FERC erred in upholding DOE's decision to impose personal liability on Imparato under the central figure theory.

### 3. DOE Properly Decided to Impose Personal Liability

As noted above, DOE imposed personal liability on Imparato after employing a two-prong test. It based the test upon *Citronelle–Mobile* and *Sutton*. *Houston Oil,* 17 DOE at 86,133. In *Citronelle–Mobile,* TECA held that

> personal responsibility for corporate liability may attach when the individual's wrongful conduct causes the violation of a statute and accompanying regulations such as the crude oil pricing laws. But because restitution is an equitable remedy, we would be careful to condition a finding of personal liability on the particular circumstances and equities of each case.

826 F.2d at 25. Thus, TECA conditioned central figure liability on two findings: (1) the individual must be found to have caused a violation; and (2) under the circumstances and equities of the case, it is equitable to impose liability. In *Sutton,* TECA held that "[a] person who is the 'animating force' for regulatory violations is fully liable even though he does not personally receive all benefits of his illegal activities." 795 F.2d at 1063.

■■■■ Pursuant to *Citronelle–Mobile* and *Sutton,* if DOE seeks to impose central figure liability upon an individual, it must show that (1) the individual exercised personal control of the firm's regulated operations or participated in the transactions in which the overcharges occurred, and (2) the individual personally benefitted from the overcharges. *See Citronelle–Mobile,* 826 F.2d at 25; *Sutton,* 795 F.2d at 1063; *The Crude Co.,* 65 FERC (CCH) ¶ 61,214 (1993). In addition, any finding of central figure liability must be conditioned upon the circumstances and equities of the case.[4] *Citronelle–Mobile,* 826 F.2d at 25.

■■■ On appeal, Houston and Imparato do not argue that DOE improperly found that Imparato met the first prong of the central figure liability test—that he was a central figure in Houston's overcharges. *See Houston,* 65 FERC at 61,284–85. Rather, their main argument is that the second prong was not properly proved—that Imparato personally benefitted from the overcharges.[5]

Houston and Imparato argue that DOE imposed personal liability without any evidence that Imparato ever received "even one dollar" of the overcharges. The only evidence proffered by DOE, they claim, was that (1) Imparato was the president and 100 percent shareholder of Houston during the period of the overcharges; (2) he acknowledged that he was "familiar with" the transactions that resulted in overcharges; (3) he signed Houston's monthly Crude Oil Reseller Self–Reporting Forms (Forms ERA–69) filed with DOE and was listed as the person responsible for preparing and filing the forms on behalf of Houston; and (4) he was the only person at Houston involved in setting crude oil selling prices. Houston and Imparato contend that because DOE failed to present any evidence of benefits he received, it improperly shifted the burden of proof.

---

4. As recounted above, Houston and Imparato argued before FERC that DOE failed to consider the particular circumstances and equities of the case. They apparently did not raise this issue before the district court and have not raised it on appeal to this court.

5. It also is argued that even if Imparato is liable for restitution under the central figure theory, the law of restitution does not allow recovery in excess of money received. TECA consistently rejected the argument. *See Sauder,* 648 F.2d at 1347–48 (As Sauder was animating force that caused the overcharges, it was within agency authority and discretion to hold him, as largest interest owner and operator, liable for the full amount of the overcharge.); *Sutton,* 795 F.2d at

1063 ("Sutton's liability ... is certainly not to be limited to the money he actually put in his pocket. A person who is the 'animating force' for regulatory violations is fully liable even though he does not personally receive all benefits of his illegal activities."); *Citronelle–Mobile,* 826 F.2d at 23–28 (holding president of corporation fully liable for overcharges because he was the "animating force" behind the sale of the oil); *Pratt v. Watkins,* 946 F.2d 907, 910 (Temp.Emer.Ct.App.1991) ("Since *Sauder,* this court has ordered a party to pay restitution in excess of charges actually received only if that party was the 'animating force' behind the sale of the oil.") (emphasis omitted).

They assert that DOE erroneously inferred from Imparato's ownership of Houston that Imparato benefitted from the regulatory violations and that DOE therefore improperly placed the burden on him to establish the negative—that he did not benefit from the overcharges. Thus, absent the improper shifting of the burden of proof, DOE failed to prove that Imparato personally benefitted from Houston's overcharges. This contention is without merit.

In *MAPCO*, TECA rejected the argument that DOE improperly shifted the burden of proof with respect to proving that in-line transactions violated the layering regulation. 993 F.2d at 244–45. TECA held that DOE had met its burden of proof when it established that MAPCO had engaged in in-line transactions and MAPCO failed to prove that it had performed a traditional resale service or function. *Id.*

Similarly, DOE here decided that a *prima facie* showing was made that Imparato benefitted from the overcharges. *Houston Oil,* 17 DOE at 86,134–35. It did so after finding that Imparato was the president and 100% owner of Houston during the period of the overcharges. *Id.* at 86,134. It found no evidence existed to suggest that Houston was not operated for profit, or that Houston did not earn a profit from the overcharges. *Id.* at 86,135. Thus, DOE found that it "can infer from Imparato's control and ownership of [Houston] ... that he benefitted from the more than $150,000,000 in overcharges established [and] uncontroverted by [Houston]. [Houston] has made no showing to the contrary." *Id.*

We agree that DOE "made a *prima facie* showing that Imparato [personally] benefitted from the overcharges." *Id.* at 86,134. First, we note that the record indicates that Houston was a corporation organized in May 1979, and that it conducted its first crude oil

transaction in the next immediate month, June 1979. *Id.* at 86,124. The overcharges at issue in this case occurred during the period June 1979 through August 1980. *Id.* at 86,123. In short, almost immediately after Houston was organized, it began engaging in transactions in violation of the layering regulation. Secondly, Houston has not challenged the amount of alleged violations or the manner in which the amount was calculated. DOE found that Houston's gross profits from the layering overcharges was almost $58 million. Lastly, and most importantly, the record indicates that Imparato was the president and 100% owner of Houston during the period of overcharges.

In sum, Imparato's solely owned corporation collected almost $58 million in overcharges, and there is no evidence as to where those funds went. The inescapable inference is that Imparato personally benefitted from the overcharges. If the overcharges remained in the accounts of his wholly owned corporation, Imparato would have directly benefitted by the increased value of the corporation. On the other hand, if the funds were distributed as salary or dividends to the sole shareholder, Imparato also would have directly benefitted. In the event that Imparato otherwise distributed the funds, for example by directing them to other corporate employees in the form of increased compensation or perhaps by making corporate charitable contributions, Imparato would still have personally benefitted, albeit indirectly. We need not determine, however, what in fact was Imparato's *ultimate* personal benefit. Given the *prima facie* showing of personal benefit, Imparato had to defend himself. There is no merit to the claim that "the burden of proof was wrongly shifted. There was no shifting; [Imparato] simply failed to defend against the government's evidence." *MAPCO,* 993 F.2d at 245.[6] In sum, given

---

**6.** Houston and Imparato also argue that TECA's decision in *Pratt,* 946 F.2d 907, supports their position on the burden of proof issue. In that case, the district court held that DOE, not Pratt, a crude oil interest owner, had the burden of proof and that DOE presented no evidence that Pratt received the overcharges. TECA affirmed and noted that "[t]o allow the DOE to meet its burden merely by proving that Pratt was entitled

to a benefit would be to eviscerate the doctrine of restitution." *Id.* at 911.

Houston and Imparato cannot rely on *Pratt,* however, because *Pratt* was not a case where DOE sought to impose central figure liability upon an individual. Unlike Imparato, Pratt was a passive interest owner. Pratt had the right to receive a share of oil sale proceeds, but he played no role in, and had no control over, the over-

the record and DOE's finding that Imparato personally benefitted as the president and sole owner of a corporation which received almost $58 million in gross profits on crude oil overcharges, we find no reason to set aside that factual finding for lack of substantial evidence or error of law.[7]

## CONCLUSION

We have reviewed the record and find that there were rational bases for the final RO issued by FERC. The RO was not based on findings unsupported by substantial evidence. The decision of the district court affirming the RO is affirmed.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

charges at issue in the case. *Id.* at 908, 911. In light of his passive involvement, TECA held that in order for DOE to recover restitution from Pratt, it had to show that he received his share of the overcharges. *Id.* at 911.

7. Houston and Imparato argue that the record established that Houston operated at an overall net loss during the audit period. Neither DOE nor FERC so found, although Imparato swore in an affidavit that "contrary to [DOE]'s allegations that [Houston] realized profits on its transactions, [Houston] actually operated at an overall net loss." The fallacy of this "overall net loss" argument is that Houston and Imparato do not contest the finding that Houston received $58 million in gross profits due to the overcharges. Even if Houston operated at a net loss, it would still benefit from the overcharge profits. For example, if Houston operated at a $200 million loss independent of the overcharges, but at a $142 million loss because of the overcharges, Imparato benefitted from the overcharges because his solely owned company suffered a smaller loss.