**Paul C. ELLIOTT, Plaintiff–Appellant,**

**v.**

**UNITED STATES FEDERAL ENERGY REGULATORY COMMISSION, Hazel O'Leary, Secretary of Energy, and United States Department of Energy, Defendants–Appellees.**

**No. 95–1361.**

United States Court of Appeals,
Federal Circuit.

Sept. 10, 1996.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Nov. 21, 1996.

[redacted]

the brief was Paul R. Elliott, Baker & Botts, L.L.P., Houston, Texas.

Don W. Crockett, Office of General Counsel, U.S. Department of Energy, Washington, DC, argued for defendants-appellees.

Before NEWMAN, MICHEL, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Paul C. Elliott appeals from the final judgment of the United States District Court for the Southern District of Texas, *Paul C. Elliott v. Department of Energy*, No. H–94–1736 (S.D.Tex. Mar. 20, 1995), affirming a remedial order ("RO") of the Federal Energy Regulatory Commission ("FERC" or "Commission"), *Concord Petroleum Corp.*, 66 FERC (CCH) ¶ 61,326 (1994). The RO imposed joint and several liability on Concord Petroleum Corp. ("Concord") and Elliott for restitution of overcharges resulting from the violation of crude oil resale regulations promulgated by the Department of Energy ("DOE"). We affirm.

## BACKGROUND

On February 28, 1990, DOE issued a RO (i) finding that Concord had violated 10 C.F.R. § 212.186 (1980) (the "layering regulation"), a crude oil resale regulation, and (ii) ordering restitution of overcharges. *Concord Petroleum Corp.*, 20 DOE (CCH) ¶ 83,004 (1990).[1] The layering regulation was promulgated by DOE under the authority of the Economic Stabilization Act of 1970 ("ESA"), Pub.L. No. 91–379, 84 Stat. 799 (1970) (codified as amended at 12 U.S.C. §§ 1901–1910 note (1994)), and the Emergency Petroleum Allocation Act of 1973 ("EPAA"), Pub.L. No. 93–159, 87 Stat. 627 (1973) (codified as amended, but omitted, at 15 U.S.C. §§ 751 *et seq.* (1994)). The RO held Concord and Elliott jointly and severally liable for restitution in the amount of $3,019,224.04, plus interest. *Concord,* 20 DOE at 86,050–53. Elliott was Concord's president, director, and 30 percent owner during the

Lawrence I. Abrams, Bethesda, Maryland, argued for plaintiff-appellant. With him on

---

1. The enforcement proceeding against Concord and Elliott was instituted on October 21, 1986, when the Economic Regulatory Administration of DOE issued a Proposed Remedial Order ("PRO"). *Concord,* 20 DOE at 86,040. The Office of Hearings and Appeals of DOE affirmed and modified the PRO, *id.* at 86,053, and thereby issued the DOE RO.

period it allegedly violated the regulation. *Id.* at 86,050. The Elliott nuclear family owned 100 percent of Concord; Elliott's wife, Nancy Elliott, owned 30 percent; and the Elliotts' children held the remaining 40 percent. *Id.* at 86,050 n. 17.

Pursuant to 42 U.S.C. § 7193 (1994), Concord and Elliott appealed the RO to FERC. The FERC Administrative Law Judge ("ALJ") affirmed the RO, but granted DOE's motion to limit Elliott's liability to 30 percent of the amount of overcharges plus interest, a percentage equal to his ownership interest. *Concord Petroleum Corp.,* 65 FERC (CCH) ¶ 63,015 (1993). Concord and Elliott appealed to the full Commission, and it affirmed the RO. *Concord,* 66 FERC ¶ 61,326. Concord did not seek judicial review. Elliott appealed the FERC RO to the district court pursuant to 42 U.S.C. § 7192(a) and ESA § 211(a), 85 Stat. at 748–49. On March 17, 1995, the district court granted DOE's motion for summary judgment and affirmed the Commission's decision. Judgment was entered on March 20, 1995, requiring Elliott to disgorge as restitution $905,767.21, plus interest. On May 19, 1995, Elliott appealed concurrently to the Courts of Appeals for the Federal Circuit and the Fifth Circuit. The Fifth Circuit dismissed the appeal, without comment, for lack of jurisdiction.

## DISCUSSION

### I. Jurisdiction

Our jurisdiction to hear this appeal is grounded in 28 U.S.C. § 1295(a)(11)–(12) (1994), which grants this court exclusive jurisdiction over appeals that arise under section 211 of the ESA,[2] and under section 5 of the EPAA.[3] EPAA/ESA appeals were previously taken to the Temporary Emergency Court of Appeals ("TECA"), but that court was dissolved effective April 29, 1993, and this court was vested with TECA's jurisdiction over EPAA/ESA appeals. *Texas Amer-*

*ican Oil Corp. v. Department of Energy,* 44 F.3d 1557, 1561–65 (Fed.Cir.1995) (in banc); *see* FCAA § 102, 106 Stat. at 4506–07.

■ We do not find the Fifth Circuit's decision to dismiss this appeal in favor of this court to be implausible. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818–19, 108 S.Ct. 2166, 2178–79, 100 L.Ed.2d 811 (1988). Accordingly, we have jurisdiction with respect to the issues raised by Elliott. *See Phoenix Petroleum Co. v. FERC,* 95 F.3d 1555, 1563–66 (Fed.Cir.1996); *Pennzoil Exploration & Prod. Co. v. Lujan,* 928 F.2d 1139, 1141 (Temp.Emer.Ct.App.1991).

### II. Standard of Review

■ In *Texas American,* this court, sitting in banc, adopted as precedent the body of law represented by the holdings of TECA. 44 F.3d at 1561. We review the district court's summary judgment decision *de novo. MAPCO Int'l Inc. v. FERC,* 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993). An EPAA/ESA FERC RO affirming a DOE RO will be enjoined or set aside only if it is in excess of DOE's authority, or is based upon findings which are not supported by substantial evidence. *Phoenix,* 95 F.3d at 1567; *MAPCO,* 993 F.2d at 239. We accord FERC's decision great deference and will approve the decision if there is a rational basis for it. *Phoenix,* 95 F.3d at 1567; *MAPCO,* 993 F.2d at 239.

### III. The Merits

■ DOE found that Concord was a crude oil reseller that violated, *inter alia,* the layering regulation during the period from June 1, 1978 through December 31, 1980. *Concord,* 20 DOE at 86,040. Concord had purchased and resold crude oil with price markups without performing services or functions traditionally and historically associated with the resale of crude oil. *Id.* at 86,040–41.[4] DOE

---

2. 85 Stat. at 748–50, as amended by the Federal Courts Administration Act of 1992 ("FCAA"), Pub.L. No. 102–572, § 102, 106 Stat. 4506, 4506–07 (1992).

3. 87 Stat. at 633.

4. The layering regulation provides in pertinent part as follows: "The price for crude oil charged by a reseller which in a sale performs no service or other function traditionally and historically associated with the resale of crude oil shall not exceed the actual price paid by the reseller for

ordered restitution of the overcharges and Elliott was held jointly and severally liable for Concord's violations under the "central figure" theory of liability. *Id.* at 86,050–52. In *Houston Oil & Refining, Inc. v. FERC*, 95 F.3d 1126 (Fed.Cir.1996), also decided today, we held that DOE can impose EPAA/ESA central figure liability on an individual if (1) the individual exercised personal control of the firm's regulated operations or participated in the transactions in which the overcharges occurred, and (2) the individual personally benefitted from the overcharges. In addition, any finding of central figure liability must be conditioned upon the circumstances and equities of the case. 95 F.3d at 1127.

■ Elliott raises the same argument that an appellant, Joseph Imparato, raised in *Houston Oil.* He argues that central figure liability cannot be imposed on him because DOE erred when it found that he personally benefitted from the overcharges. Elliott argues that DOE failed to produce any evidence that he received benefits from Concord in any form. According to Elliott, the RO must be vacated because DOE failed to meet its burden of proof.

The FERC ALJ concluded that DOE's finding that Elliott benefitted from the overcharges was supported by substantial evidence. According to the ALJ, Concord and Elliott failed to recognize that evidence of personal benefit is not limited to cash payments and can include any increase in the value of an individual's ownership interest in a firm. *Concord*, 65 FERC ¶ 63,015. The ALJ considered the circumstances and equities of the case and held that "[i]nasmuch as Elliott was a 30% stockholder in Concord and clearly received the benefit of Concord's regulatory violations, and inasmuch as he was clearly the central force driving Concord's operation, the decision to impose joint and several liability on Elliott and Concord was appropriate." *Id.*

FERC found that DOE had established an unrebutted *prima facie* case of personal benefit. The Commission stated:

the crude oil...." 10 C.F.R. § 212.186 (1980);

Concord was a corporation engaged in the business of purchasing crude oil and reselling it to purchasers. Elliott was president, director and a 30–percent owner of Concord. Elliott participated in Concord's transactions to the extent that he personally signed every crude oil purchase or sale contract known to DOE. Elliott controlled Concord, was aware of and approved the contracts he signed, and had substantial responsibility for the firm's management. Elliott and Concord engaged in sales which violated the layering regulations and resulted in $3,019,224.04 of illegal revenues....

*Concord*, 66 FERC ¶ 61,326 (footnote omitted). The Commission also noted that the Elliott family owned 100 percent of Concord. We find no error in the Commission's decision that DOE had established a *prima facie* case of personal benefit, which Concord and Elliott failed to rebut.

There is, however, one statement in the FERC decision that is contrary to our holding in *Houston Oil* and the caselaw of TECA. FERC stated that it "agrees with the holdings of [DOE] in other cases that ownership *or* control of a firm's operation at the time of alleged violations implies the receipt of personal benefit." *Concord*, 66 FERC ¶ 61,326 (emphasis added). However, there is no EPAA/ESA central figure liability law that "ownership or control" implies benefit. In *Pratt v. Watkins*, 946 F.2d 907 (Temp.Emer.Ct.App.1991), TECA held that if DOE seeks to recover restitution from an individual who was a passive owner, and who had no role in and had no control over the EPAA/ESA violations, DOE must show the passive owner actually received the overcharges. 946 F.2d at 910–12. Similarly, we are not aware of a central figure liability case where TECA or this court has found that control alone implies benefit. For example, in this case, DOE found that facts of control *and* ownership supported a finding of benefit. Elliott was president, director and 30 percent owner of Concord, and the Elliott nuclear family owned 100 percent of Concord. *Concord*, 20 DOE at 86,050–51.

*MAPCO*, 993 F.2d at 238.

 Elliott also argues that the FERC RO must be set aside because he was denied a due process review at the Commission. The district court rejected this argument.[5] We find no error in the district court's decision on this point.

Finally, Elliott contends that FERC, a non-Article III tribunal, lacked authority to adjudicate his central figure personal liability, because this theory of liability is one of common law. We found this argument to be contrary to TECA precedent and without merit in *Houston Oil.* 95 F.3d at 1136–37.

## CONCLUSION

We have reviewed the record and find that the RO issued by FERC was based on findings supported by substantial evidence and did not exceed agency authority. The decision of the district court affirming the RO is therefore affirmed.

## COSTS

Each party shall bear its own costs.

*AFFIRMED.*

---

**5.** The district court held as follows:

[Elliott]'s final argument is that he was denied due process. This argument is based on the issuance of a Decision and Proposed Order ("D & PO") by the [ALJ] prior to oral argument and the subsequent adoption of that D & PO following oral argument. It is undisputed that the agency's rules require a hearing prior to the issuance of the D & PO. It is equally undisputed that Concord and Elliott received a hearing. [Elliott]'s contention that he was denied due process relies exclusively on statements made by the ALJ at the time of oral argument. [Elliott] points out that the ALJ stated:

I have no intention of reviewing my proposed decision. My proposed decision was based on a factual record. I don't believe that anything [that] could be argued here is going to change my determination.

[DOE] note[s], however, that the ALJ also stated "if something strikes me that I haven't considered before" he would consider it. The ALJ's comments reflect that he had already given the matter careful consideration and only argument which presented something not previously considered would be effective in changing his initial determination. This is a far cry from denying the right to a meaningful hearing; indeed, the ALJ was giving notice to the parties that only meaningful oral arguments would be effective. The Court finds without reservation that Elliott was provided an opportunity for a meaningful hearing.